E-FILED
Monday, 14 February, 2022  10:00:13 AM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | | |
|---|---|---|
| TRACY L. CUMMINGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-cv-3180 |
| | ) | |
| KILOLO KIJAKAZI, Acting | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## <u>OPINION</u>

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

Plaintiff Tracy I. Cummings appeals from the denial of her application for Social Security Disability Insurance Benefits (Disability Benefits) under Title II of the Social Security Act.  42 U.S.C. §§ 416(i) and 423.  This appeal is brought pursuant to 42 U.S.C. § 405(g).  Cummings filed a Motion for Summary Judgment (d/e 16).  Defendant Acting Commissioner filed a Motion for Summary Affirmance (d/e 21).   Cummings then filed a Response to Commissioner's Motion for Summary Affirmance and Supporting Memorandum (d/e 22).  The parties consented to proceed

---

[1] The Court takes judicial notice that Dr. Kilolo Kijakazi, Ph.D., is now the Acting Commissioner of Social Security.  As such, he is automatically substituted in as the Defendant in this case.  Fed. R. Civ. P. 25(d).

before this Court.  Consent to the Exercise of Jurisdiction by a United States Magistrate Judge and Reference Order entered July 27, 2020 (d/e 8).  For the reasons set forth below, the Decision of the Acting Commissioner is AFFIRMED.

## BACKGROUND

Cummings was born on December 22, 1973.  She completed high school and two years of college and previously worked as a public health nurse and a general duty nurse.  She alleged that she became disabled on August 9, 2016 (Onset Date).  Cummings suffered from venous insufficiency, diabetes mellitus, obstructive sleep apnea, obesity, non-alcoholic fatty liver disease (NAFLD), neuropathy, gastroparesis, migraines, tinnitus, right carpal tunnel syndrome, sacroiliitis, lumbar degenerative disc disease, sciatica, right shoulder impingement, dysthymia, and major depressive disorder.  Certified Transcript of Proceedings before the Social Security Administration (d/e 12 and 13) (R.), at 13, 16, 26.

## STATEMENT OF FACTS

### Facts from Evidence Submitted Before the Evidentiary Hearing

On November 11, 2015, Cummings saw physician's assistant Wayne Blevins, PA-C, for a follow up on her diabetes.  Cummings reported numbness in her extremities without pain.  On examination, she was 67.5

inches tall, weighed 260 pounds, and has a body mass index (BMI) of 40.12.  Blevins assessed uncontrolled diabetes.  R. 640-41.

On February 23, 2016, Cummings saw gynecologist Dr. Heather Beal, M.D., for her annual examination and to discuss menorrhagia and possible ablation.  On examination, her sensation to light touch was intact throughout.  R. 328.  On March 11, 2016, Dr. Beal performed the ablation. R. 326.

On March 18, 2016, Cummings saw nurse practitioner Robin Wells NP in Dr. Beal's office complaining of abdominal pain.  R. 324-25.  On examination, Cummings was alert and oriented; her musculoskeletal exam showed full range of motion and good muscle tone generally with no bone or joint deformities.  Wells believed Cummings' pain was gastrointestinal and recommended a bland diet.  R. 324.

On June 26, 2016, Cummings saw physician's assistant Blevins.  She reported fatigue and headaches.  A blood test on May 14, 2016, showed an A1c of 10.2.  Blevins assessed uncontrolled diabetes and benign hypertension.  R. 631-32.

On December 16, 2016, Cummings saw cardiac specialist Dr. Himanshu Pathak, M.D., for an ECG and echocardiogram.  R. 341-48. Cummings reported some fatigue and said she had sleep apnea and used

a CPAP machine.  She reported occasional palpitations and swelling in her feet.  She stopped taking Lasix on her own and reported that compression stockings have helped.  Dr. Pathak opined that the swelling in her legs was likely due to venous insufficiency, and the swelling happened on prolonged standing.  Cummings denied orthopnea, PND, syncope, or chest pain.  The ECG and echocardiogram were normal.  R. 347-48.  On examination, Cummings was oriented and in no acute distress.  Her musculoskeletal exam showed no deformity.  R. 343-44.  Dr. Pathak determined that her symptoms were not cardiac in nature and recommended focusing on managing her diabetes, sleep apnea, and stress.  R. 347-48.

On January 16, 2017, Cummings saw physician's assistant Blevins for a follow up.  She reported moderate headaches without visual disturbance, dizziness, or shortness of breath.  She also reported fatigue and numbness in her extremities without pain.  Blevins assessed uncontrolled diabetes and benign hypertension.  R. 629-30.

On January 24, 2017, Cummings saw Dr. Rocio Del Carmen Zeballos-Chavez, M.D., for her sleep apnea.  She previously had CPAP therapy, and reported that she was using her CPAP machine every night with good tolerance.  She said it was hard to fall asleep and she took Ativan at bedtime to help her fall asleep but still woke up often during the

night.  R. 559.  On examination, her extremities were symmetric with normal muscle mass; her proximal muscle strength was good; her reflexes were symmetric and normal with normal relaxation phase; she could arise from a chair easily without use of her arms.  R. 563.

On March 20, 2017, Cummings saw physician's assistant Blevins. Blevins assessed uncontrolled diabetes.  R. 621-22.

On May 8, 2017, Cummings saw endocrinologist Dr. Deepashree Gupta, M.D., for evaluation of her diabetes.  R. 433-45.  Dr. Gupta noted that Cummings had peripheral neuropathy and possibly gastroparesis as complications of her diabetes.  Cummings reported that her symptoms were getting worse and she had nausea and decreased appetite.  R. 439. On examination, Cummings' gait and station were within normal limits and her neurologic examination was within normal limits.  Dr. Gupta assessed type 2 diabetes with hyperglycemia and modified her diabetes medication. R. 444.

On May 11, 2017, Cummings saw physician's assistant Blevins.  Her most recent A1c was 9.8.  Cummings reported migraine headaches and that her symptoms were worsening.  Her migraine triggers were fatigue, stress, sleep deprivation, menses onset, and weather changes.  R. 618. Blevins modified Cummings' diabetes medication and assessed

uncontrolled diabetes.  Blevins' assessment of Cummings' condition did not mention migraines.  R. 619.

On May 12, 2017, Cummings saw ENT specialist Dr. Anthony Mikulec, M.D., for intermittent fullness in her ears and mild tinnitus. Dr. Mikulec noted that Cummings had "multiple medical problems" including diabetes, migraines, and cyclical vomiting syndrome.  He told Cummings that migraines could cause tinnitus and ear fullness.  Dr. Mikulec's physical examination of her ears and throat was normal, and her hearing test was normal.  Dr. Mikulec assessed intermittent mild otalgia and fulness likely due to a history of migraines.  R. 545-46.

On May 18, 2017, Cummings saw nurse practitioner Morgan Harris, NP, to establish primary care.  She reported decreased appetite and said she was diagnosed with gastroparesis and that her blood sugar readings were between 100 and 240. She had a psychiatric appointment scheduled, but she denied any current symptoms of depression or anxiety.  R. 543. On examination, Cummings was in no acute distress; she had a steady gait; she had no tenderness to palpation in her joints, and no synovitis in her hand, knee, wrist, or elbow joints.  Her neurological exam was normal with no neurologic deficits; she was oriented, calm, with a congruent affect. R. 544.

On June 12, 2017, Cummings saw endocrinologist Dr. Alexis McKee, M.D., for a follow up on her diabetes. Cummings reported that she sometimes had headaches in the morning and had migraines. R. 538-39. On examination, Cummings was five feet seven and one-half inches tall, weighed 237 pounds, and had a body mass index (BMI) of 36.71. Her feet were normal on visual examination, her sensory examination with monofilament was normal, and her pedal and tibial pulses were normal. R. 541.

On June 21, 2017, Cummings went to the emergency room for abdominal pain. She saw Dr. John Massimilian, D.O. R. 359. On examination, she was alert, oriented, in no acute distress, and had a normal affect; her musculoskeletal exam showed normal range of motion, intact strength, and no edema, soft tissue swelling, or tenderness; her neurological exam showed no gross motor deficits. R. 360-61.

On August 11, 2017, Cummings saw nurse practitioner Harris. Cummings' blood sugar levels had improved with a change in her medications, running from 100 to 200. She requested new diabetic shoes and reported neuropathy pain in her lower extremities. Cummings said her migraines were worse with heat and occurred several times a week. She had a migraine the day before the appointment. Cummings requested

Botox injections and said her gastrointestinal symptoms had improved with use of a pro-biotic.  R. 792.  On examination, Cummings was in no acute distress; she was alert, oriented, calm, and had a congruent affect; she had no tenderness to palpation or synovitis in her joints; she had 5/5 strength in her extremities.  She had a normal neurological exam with no focal neurologic deficits and a visual examination of her feet was normal.  She had decreased sensation in her heels, soles, and toes of her feet bilaterally.  Her pedal and tibial pulses were normal.  R. 793-94.

On August 11, 2017, Cummings saw ophthalmologist Dr. Steven Shields, M.D.  Cummings reported that she was diagnosed with glaucoma a year earlier.  She said her vision was "fuzzy while reading," she sometimes felt pressure behind her eyes, and she had eye strain and difficulty focusing.  She did not have eye pain, except when she had migraines.  She said she had migraines for 15 years and that they had been worse for the last seven years.  Dr. Shields assessed mild glaucoma and prescribed medication.  R. 797-98.

On August 16, 2017, Cummings saw Dr. Beal for her annual gynecological examination.  Cummings reported that she was seeing new doctors for her ongoing medical conditions and was happy with the results

and outcomes.  On examination, her extremities were non-tender with no edema and her sensation to light touch was intact throughout.  R. 780.

On October 10, 2017, Cummings saw neurologist Dr. Ahmed Jafri, M.D., for her headaches.  Cummings said she had been having left hemi-cranial headaches for more than 20 years and the headaches were worse 11 years ago postpartum.  The headaches lasted for days and on rare occasions she had a visual aura.  She had nausea, vomiting, photophobia, phonophobia, and osmophobia with the headaches and they became worse with head movement.  She had headaches twice a week and daily in hot weather.  Her headaches were triggered by allergies, infections, MSG, processed/smoked food, and alcohol especially wine.  She took sumatriptan in the past; it was effective but did not provide complete relief.  She had marginal benefits from prophylactic use of propranolol and also took gabapentin for diabetic peripheral neuropathy.  She said she had cyclical vomiting in 2011 which was treated with amitriptyline (Elavil).  R. 881-82.  On examination, Cummings was awake, alert, oriented, and had intact cranial nerves and full field of vision; she had normal coordination and a stable gait; she could stand, walk on her heels and toes, and tandem walk; her sensory examination was normal; she had normal muscle tone, bulk, and strength in her extremities.  R. 884.  Dr. Jafri diagnosed

migraines with aura and without migrainosus, not intractable, and migraine without aura and without status migrainosus, not intractable.  R. 875. Status migrainosus is a debilitating migraine that lasts for greater than 72 hours.  International Classification of Headache Disorders, § 1.4.1 (3ʳᵈ ed. 2018) available at: 1.4.1 Status migrainosus - ICHD-3 (ichd-3.org), viewed January 12, 2022.  An intractable migraine is a severe migraine that lasts for more than 72 hours and does not respond (is refractory) to usual therapies for migraines.  Intractable Migraine • National Headache Foundation (headaches.org), viewed January 13, 2022.  Dr. Jafri prescribed sumatriptan if cleared by Cumming's cardiologist and told Cummings to maintain a headache diary.  R. 884.

On October 13, 2017, state agency physician Dr. Julio Pardo, M.D., prepared a Physical Residual Functional Capacity Assessment.  R. 78-80. Dr. Pardo opined that Cummings could occasionally lift 20 pounds and frequently lift 10 pounds; stand and/or walk about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; and occasionally crawl, crouch, kneel, stoop, balance, and climb ramps, stairs, ladders, ropes, and scaffolds.  He opined that Cummings must avoid concentrated exposure to extreme cold and heat, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards.  R. 78-79.

On November 7, 2017, Cummings saw Dr. McKee for her diabetes. R. 894-914.  Cummings reported that her stomach issues were better.  R. 902.  On review of her systems, Dr. McKee reported that her musculoskeletal system was within normal limits.  On examination, Cummings was oriented, and her judgment and insight were within normal limits.  Dr. McKee's visual examination of Cummings' feet was normal.  She had decreased sensation in her feet with monofilament testing; her pedal and tibial pulses were normal.  R. 908.  Dr. McKee found that Cummings' diabetes was controlled with an A1c of 6.6 percent.  R. 912.  Dr. McKee continued Cummings' insulin and other diabetes medications.  R. 914.

On November 20, 2017, Cummings had x-rays of her cervical spine. The x-rays showed normal alignment of the vertebral bodies with no change on flexion and extension; no acute fracture; up to mild degenerative disc disease; and disc osteophyte complexes at C4-5 and C5-6.  The predental interval and prevertebral soft tissue was normal, and bone density was normal.  R.941.

On December 5, 2017, Cummings saw Dr. Christin Tu, M.D., for a periumbilical hernia.  Dr. Tu performed laparoscopic surgery to repair the hernia.  R. 951-59.  During the preoperative review of Cummings' bodily

systems, Cummings reported that she was negative for joint pain and muscle spasms.  R. 956.

On February 7, 2018, state agency physician Dr. Lenore Gonzalez, M.D., prepared a Physical Residual Functional Capacity Assessment.  R. 94-97.  Dr Gonzalez opined that Cummings could occasionally lift 20 pounds and frequently lift 10 pounds; stand and/or walk about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; and occasionally crawl, crouch, kneel, stoop, and climb ramps and stairs; but never climb ladders, ropes, and scaffolds.  Dr. Gonzalez opined that Cummings must avoid concentrated exposure to extreme cold and heat, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards.  R. 78-79.

On February 13, 2018, Cummings saw ophthalmologist Dr. Shields for a follow up on her glaucoma.  She reported no change in her vision and that she sometimes could not focus when she had migraines.  R. 1994.

On February 26, 2018, Cummings saw neurologist Dr. Roula Al-Dahhak, M.D.  R. 2047-60.  Dr. Al-Dahhak noted that Cummings was previously seen by Dr. Jafri.  Cummings received an occipital nerve block and reported that the nerve block helped with her headaches.  Her medication Elavil (amitriptyline) also helped with her headaches.  She last

had a migraine on February 20, 2018, which resolved with Tylenol and sleep.  Her migraines caused light sensitivity, noise sensitivity, nausea, vomiting, and vision changes and she rated the severity of her migraines as 5/10.  She had a recent emergency room visit due to her migraines.  Her migraines were worsened by stress, lack of sleep, light, noise, and hunger, and were relieved by medication and sleep.  Cummings reported that she could function when she had a migraine headache.  R. 2055-56.  On examination, Cummings had a normal cranial nerve examination; she had normal muscle tone and bulk, with no spasticity, rigidity, or atrophy; her muscle strength was 5/5 in her extremities; her reflexes were normal except her ankle reflex was absent; her sensory exam was normal except her vibration sensation was absent at her toes and reduced at her ankles; her gait was normal.  R. 2059.  Dr. Al-Dahhak assessed migraine without aura, responsive to current management, and diabetic neuropathy and scheduled an EMG/nerve conduction study of Cummings' legs and continued her Elavil.  They also discussed diet and exercise as well as the option of gastric surgery.  R. 2060.

On March 15, 2018, Dr. Al-Dahhak performed an EMG/nerve conduction study on Cummings.  On examination, Dr. Al-Dahhak found absent ankle jerks, reduced sensory examination in both feet, and normal

muscle strength in both legs.  R. 978.  The EMG/nerve conduction study showed chronic polyneuropathy consistent with her history of diabetes, and right median neuropathy at the carpal tunnel affecting sensory and motor fibers with no ongoing denervation.  R. 980.

On April 30, 2018, Cummings saw neurologist Dr. Aninda Acharya, M.D. for a follow up on her migraine headaches.  The headaches occurred at any time in any context lasting for several hours.  She received a nerve block since her visit with Dr. Jafri in November 2017.  The nerve block helped her symptoms and she had no new neurological complaints.  R. 2278.  On examination, Cummings was awake, alert, and oriented, with good concentration and insight; her cranial nerves were intact; she had a full-strength shoulder shrug; she had 5/5 strength in all her extremities with normal tone and no atrophy; she had intact sensation to light touch in all her extremities but decreased vibratory sensation in her ankles bilaterally. She had a normal gait and coordination and her peripheral neuropathy symptoms were stable.  R. 2282.  Dr. Acharya modified her medications and ordered an MRI of Cummings' brain.  R. 2283.

On May 9, 2018, Cummings saw advanced practice nurse Harris.[2] Cummings reported that since her last office visit with Harris, she went to the emergency room twice for migraines.  R. 2304.  On examination, Cummings had 5/5 strength in her extremities and no focal neurological deficits.  R. 2305.

On May 17, 2018, Cummings had x-rays of her lumbar spine.  The x-rays showed a grade 1 L4-5 anterolisthesis with mild disc space narrowing; no evidence of acute fracture; intact intervertebral disc spaces at other levels; small endplate osteophytes at L4-5; facet osteoarthritis in the lower lumbar spine; and intact sacroiliac joints.

On May 30, 2018, Cummings underwent an MRI of her brain which showed normal results without evidence of hemorrhage or infarction.  The MRI showed no findings to explain Cummings' symptoms.  R. 1205.

From June 14, 2018 to July 13, 2018, Cummings participated in a course of physical therapy for her back pain.  R. 962-74.  On June 25, 2018, Cummings told her physical therapist that she had a migraine the Saturday before and was in bed all day.  R. 967.  At the end of the course

---

[2] At some point Harris' credential changed from a nurse practitioner to an advanced practice nurse, APRN-CNP.

of therapy, Cumming's functional status improved, and subjective and objective findings showed improvement.  R. 962.

On July 5, 2018, Cummings saw Dr. McKee for a follow up exam. Her A1c was 7.8 percent and she reported home blood sugar readings that sometimes exceeded 200.  Cummings reported migraine headaches and nausea.  On examination, Cummings had normal affect and mood; she had palpable pulses in her feet; she had no sensation to monofilament until above her ankles.  Blood tests on the date of the examination showed an A1c of 8.2.  R. 2388-90.

On August 22, 2018, Cummings saw Dr. Anjan Bhattacharyya, M.D., for a routine follow up. She reported her migraine frequency had increased due to stress and she was considering bariatric surgery.  Her fatigue was significantly limiting and reported that her mood was fair.  R. 2535-36.  On examination, Cummings was alert and oriented, with normal speech and no focal neurological findings or movement disorders; her extremities had no edema, clubbing, or cyanosis; her gait was stable.  R. 2538.

On September 14, 2018, Cummings had x-rays of her right shoulder. The x-rays showed mild degenerative changes and arthritis at the acromioclavicular and glenohumeral joints; and a bone spur with rotator cuff tendinopathy.  R. 1206.

On October 2, 2018, Cummings had MRIs of her cervical and lumbar spines.  The cervical spine MRI showed normal results with no spinal canal or foraminal stenosis.  The lumbar MRI showed L4 spondylosis; grade 1 anterolisthesis at L4-5, and no significant canal or foraminal stenosis.  R. 1208, 1210.

On October 4, 2018, orthopedic physician's assistant Heidi Elaine Roeder, PA-C, administered a corticosteroid injection into Cummings' right carpal tunnel to relieve her carpal tunnel syndrome.  R. 1216.

On October 5, 2018, Cummings saw Dr. McKee and resident Dr. Anjul Sharma, M.D., for a follow up on her diabetes.  R. 2572-84.  On examination, Cummings was oriented, and her insight and judgment were within normal limits.  Dr. McKee observed that Cummings' reflexes were within normal limits, and her sensation with monofilament on the plantar surfaces of the feet was within normal limits.  R. 2577.  Dr. Sharma, however, observed in his examination absent sensation to monofilament in the left foot and mild sensation over the dorsum of the right foot.  Dr. Sharma found normal vibratory sensation in both feet.  R. 2584.  Blood tests at the examination showed an A1c of 7.2.  R. 2578.  Dr. McKee assessed stable diabetes.  R. 2581.  Dr. Sharma assessed diabetes complicated with neuropathy and gastroparesis.  R. 2584.

On October 17, 2018, Cummings saw neurologist Dr. Acharya for migraines.  R. 2609-32.  Cummings had a nerve block that day and reported she had migraines five days a week that caused light and noise sensitivity and nausea.  She had no side effects from her medications and no neurological complaints. R. 2610.  On examination, she was awake, alert, oriented, and her memory was good; her cranial nerves were intact; her gait was intact; her sensation was intact except for deceased sensation at her ankles.  R. 2614.  Dr. Acharya reviewed the MRI of Cummings' brain and assessed chronic migraine.  Dr. Acharya added Topamax as a prophylactic medication, and also added sumatriptan injections to use at the onset of a migraine.  Dr. Acharya instructed Cummings to maintain a headache diary.  R. 2615, 2620.

On October 21, 2018, Cummings had a transforaminal epidural steroid injection on the right at L4-5 in her lumbar spine.  She reported that her back pain went from 4/10 to 0/10 after the injection.  R. 1154, 1211.

On January 11, 2019, Cummings saw orthopedic physician's assistant Roeder, PA-C for back pain and wrist pain.  She said the prior corticosteroid injection in her right wrist improved her carpal tunnel syndrome, but reported that the symptoms were returning and requested another injection.  Cummings reported that epidural steroid injection at L4-5

in her lumbar spine only provided a few days' relief.  Her back pain in the right lumbar spine extended into the right leg and calf and caused numbness in her right leg.  She reported neck pain that radiated into her right arm and hand.  Her symptoms were exacerbated by standing and walking.  Sitting briefly relived the pain and she could ambulate without assistance.  R. 1173-74.  On examination, Cummings was in no distress; she could ambulate with a normal gait; she had no obvious spine deformities; her strength was 5/5 in her extremities, including grip strength.  Hoffman's sing was negative, Romberg sign was negative, tandem gait test was negative, and rapid grip and release test was negative.[3]  Phalen's sign was positive on the right.[4]  She could stand erect and balanced and her lumbar spine was not tender.  Straight leg raising tests were negative and she could heel and toe walk.  She had decreased sensation in a stocking distribution.  Roeder reviewed the May 2018 lumbar spine x-ray, the November 2017 cervical spine x-ray, and the October 2018 MRIs of the lumbar and cervical spine and assessed lumbar spondylosis with radiculopathy, grade 1 anterolisthesis L4-5 with pars defect, and right carpal tunnel syndrome.  Roeder put no restrictions on Cummings.  She

---

[3] Hoffman's sign is a test for reflexes in the fingertips.  Romberg's sign is a balance test with feet close together.  Dorland's Illustrated Medical Dictionary (32nd ed. 2013) (Dorland's), at 1712-13.

[4] Phalen's sign is a test for carpal tunnel syndrome.  Dorland's, at 1714.

told Cummings to continue physical therapy exercises at home and to use over-the-counter Tylenol for pain.  Roeder administered a corticosteroid injection to Cummings' right wrist and said that Cummings was scheduled for further lumbar epidural steroid injections.  R. 1176; <u>see</u> R. 1176-81, 1218.

On January 11, 2019, Cummings also saw orthopedic physician's assistant Lauren Smith, PA-C, for right shoulder pain.  Cummings said the symptoms came on with activity and improved with rest.  R. 1165.  On examination, Cummings had a normal gait, no cervical spine tenderness, no deformity detected by palpation, and good neck range of motion with no pain.  Smith's inspection of the right shoulder was mildly positive for pain on rotator cuff insertion.  Smith found no evidence of rotator cuff weakness.  A test for impingement of the rotator cuff and tendinopathy was equivocal.  Smith reviewed the September 2018 right shoulder x-rays and assessed right shoulder rotator cuff impingement and arthritis of the right acromioclavicular joint.  Smith administered a cortisone injection into the affected area and recommended icing three times a day, physical therapy exercises, and anti-inflammatory medication.  R. 1170-73, 1217.

On February 28, 2019, Cummings saw pain specialist Dr. Hugh Berry, M.D., for back pain and leg pain.  She rated the pain at 5/10.

Changing positions from sitting to standing, standing, sitting, walking, lying down, and exercise aggravated the pain; however, lying down and sitting sometimes relieved the pain and physical therapy provided moderate improvement.  An epidural steroid injection helped for a few days.  R. 2214-15.  On examination, Cummings had normal range of motion in her extremity joints; her sacroiliac joints were tender on the right; she had no tenderness or spasms in the muscles around her spine; she had full range of motion with no pain in her cervical spine; she had full range of motion in her lumbar spine with some pain; she could heel, toe, and tandem walk; her sensation was intact to light touch, pinch, and vibratory testing; her reflexes were normal in her upper extremities and diminished in her lower extremities; she had 4-5/5 strength throughout; her straight leg testing was negative bilaterally.  R. 2220-21.  X-rays of the lumbar spine showed a grade 1 anterolisthesis of L4-5 with moderate degenerative disc disease.  R. 2223.  Dr. Berry assessed spondylolisthesis at L4-5, and chronic right-sided low back pain with right-sided sciatica.  R. 2222.

<u>The Evidentiary Hearing</u>

On May 14, 2019, the Administrative Law Judge (ALJ) conducted an evidentiary hearing.  R. 35-70.  Cummings appeared in person and with her

attorney.  Vocational expert Holly Berquist Neal appeared by telephone.  R. 36-37.

Cummings testified that she secured an associate degree and was a registered nurse.  R. 41.  She lived in a house with her children, one aged 17 years and twins aged 12 years.  R. 44.

Cummings had a driver's license and drove short distances.  She did not feel safe driving far because of the number of medications she took and because of the risk that she would have a migraine headache.  Her neuropathy also created problems when she drove.  Her shoe came off while she was driving, and she did not notice because of the peripheral neuropathy.  R. 44-45. Cummings quit her last job because she had to drive out of town and stay overnight.  R. 59-60.

Cummings took several medications for her conditions.  Aside from the medications for her migraines, she took Aleve, ibuprofen, and Tylenol for pain.  R. 45-47.  Metoprolol may have caused fatigue and hair loss. R. 48.

Cummings said that her neuropathy affected her hands and her feet. It caused numbness, burning, and pain in her feet and she had constant pain that was worse at times.  She also had swelling in her feet and her legs and the pain limited her ability to stand.  She wore compression

stockings when she was not in bed and she elevated her feet as much as possible, about half of the day.  R. 52-54.

Cummings' neuropathy also caused numbness and tingling in her hands which occurred about half of the time.  She had a weak grip and difficulty with fine motor skills.  R. 54-55.  She took gabapentin for her neuropathy, but the medication did not make a difference. R. 55.

Cummings testified that she had pain in several parts of her body. The worst pain area varied from day to day and her back pain affected her ability to do household chores.  The physical therapy on her right shoulder did not improve her condition.  She had pain lifting with her right arm and reaching overhead with her right arm was painful.  R. 56-57.

Cummings testified that the frequency of her migraine headaches varied.  Sometimes she had headaches every day and sometimes once a week.  She gave herself injections for migraines three times in the prior week.  R. 57-58.  Cummings went to bed when she had a migraine and tried to sleep.  R. 62.

Cummings said that her conditions limited her ability to pay attention and concentrate.  She agreed, however, that she "could handle … following through on a consistent basis, with simple routine tasks."  R. 62.  She believed, though, that she would have a hard time showing up for work five

days a week.  If she showed up, she would need extra breaks at work.  R.

63.

Vocational expert Neal then testified.  The ALJ asked Neal the

following hypothetical question:

> Please assume an individual, the same age, education and
> work experience as the claimant. This individual will be able to
> lift up to ten pounds occasionally, stand and walk for about two
> hours, and sit for up to six hours in an eight-hour workday with
> normal breaks. The individual would never be able to climb
> ladders, ropes, or scaffolds, and would occasionally be able to
> climb ramps or stairs, balance, stoop, kneel, crouch, and crawl.
> The individual would be able to engage in occasional overhead
> reaching with the right upper extremity.  And the individual is
> able to engage in frequent, bilateral handling. The individual
> would need to avoid even occasional exposure to pulmonary
> irritants such as fumes, odors, dusts, gases, chemicals, and
> poorly ventilated areas and would need to avoid all use of
> dangerous moving machinery and exposure to unprotected
> heights. The individual is able to perform simple, routine, and
> repetitive tasks in a work environment free of fast-paced
> production requirements involving only simple work related
> decisions and routine work place changes. Would such an
> individual, with these limitations, be able to perform any of the
> claimant's past work as actually or generally performed?

R. 65-66.  Neal opined that such a person could not perform Cummings'

past relevant work.  Such a person could perform a number of jobs in the

national economy including document preparer, with 2,972,930 such jobs in

the national economy; charge account clerk, with 14,690 such jobs in the

national economy; and food and beverage order clerk, with 159,210 such

jobs in the national economy.  R. 67.  Neal opined that the person could not

work if she was absent two days a month.  R. 67.  The person could be off task a maximum of 14 percent of the time at work and maintain employment.  Neal also stated that the person could take one additional break a day beyond the regular breaks and still maintain employment.  The additional break, however, could not exceed 10 minutes.  R. 68.  The hearing concluded.

## THE DECISION OF THE ALJ

On July 18, 2019, the ALJ issued her decision.  The ALJ followed the five-step analysis set forth in Social Security Administration Regulations (Analysis).  20 C.F.R. §§ 404.1520, 416.920.  Step 1 requires that the claimant not be currently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If true, Step 2 requires the claimant to have a severe impairment.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If true, Step 3 requires a determination of whether the claimant is so severely impaired that she is disabled regardless of her age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d).  To meet this requirement at Step 3, the claimant's condition must meet or be equal to the criteria of one of the impairments specified in 20 C.F.R. Part 404 Subpart P, Appendix 1 (Listing).  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant is not so severely impaired, the ALJ proceeds to Step 4 of the Analysis.

Step 4 requires the claimant not to be able to return to her past relevant work considering her age, education, work experience, and Residual Functional Capacity (RFC).  20 C.F.R. §§ 404.1520(e) and (f), 416.920(e) and (f).  If the claimant cannot return to her prior work, then Step 5 requires a determination of whether the claimant is disabled considering her RFC, age, education, and past work experience.  20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g), 416.960(c).  The claimant has the burden of presenting evidence and proving the issues on the first four steps.  The Commissioner has the burden at Step 5 to present evidence that, considering the listed factors, the claimant can perform some type of gainful employment that exists in the national economy.  20 C.F.R. §§ 404.1512, 404.1560(c); Weatherbee v. Astrue, 649 F.3d 565, 569 (7th Cir. 2011); Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 352 (7th Cir. 2005).

The ALJ found that Cummings met her burden at Steps 1 and 2.  She did not engage in substantial gainful employment after the Onset Date, and she suffered from the severe impairments of venous insufficiency, diabetes mellitus, obstructive sleep apnea, obesity, NAFLD, neuropathy, gastroparesis, migraines, tinnitus, right carpal tunnel syndrome, sacroiliitis, lumbar degenerative disc disease, sciatica, right shoulder impingement, dysthymia, and major depressive disorder.  R. 16.  The ALJ determined

that Cummings' impairments or combination of impairments did not meet or

equal a Listing.  R. 16-20.

The ALJ then found that Cummings had the following RFC:

After careful consideration of the entire record, the undersigned
finds that the claimant has the residual functional capacity to
perform a range of sedentary work as defined in 20 CFR
404.1567(a). Specifically, the claimant is able to lift up to ten
pounds occasionally. She is able to stand/walk for about two
hours and sit for up to six hours in an eight-hour workday, with
normal breaks. She is unable to climb ladders/ropes/scaffolds,
but is occasionally able to climb/ramps stairs, balance, stoop,
kneel, crouch, and crawl. She is able to engage in occasional
overhead reaching with the right upper extremity. She is able to
engage in frequent bilateral handling. The claimant should
avoid even occasional exposure to pulmonary irritants, such as
fumes, odors, dust, gases, chemicals, and poorly ventilated
areas. She should avoid all exposure to unprotected heights
and use of dangerous moving machinery. She is able to
perform simple, routine, and repetitive tasks in a work
environment free of fast-paced production requirements,
involving only simple work-related decisions and routine
workplace changes.

R. 20.  The ALJ relied on examination findings of normal sensation and

noted the EMG/nerve conduction study that showed polyneuropathy but

noted no change in overall treatment and that Cummings' peripheral

neuropathy symptoms were stable.  R. 22.  The ALJ also relied on Dr.

Jafri's findings that that Cummings' migraines were not status migrainosus

and not intractable.  R. 22.  She also relied on the brain MRI that did not

disclose any cause, and the fact that Cummings continued to receive

medication for the migraines without significant change or worsening.  R.

22.  The ALJ also relied on the imaging of Cummings' spine, shoulder, and

wrist that showed mild to moderate degenerative changes, physical

examinations that showed full range of motion and good muscle tone in the

extremities, and examination notes that showed effective relief from

injections into her sciatica, shoulder, and wrist.  The ALJ further noted that

Cummings showed improvement with physical therapy, and she had a

normal gait.  R. 22-23.  The ALJ also relied on the opinions of Drs. Pardo

and Gonzalez, although she found that evidence added to the file after they

issued these opinions showed more limitations that warranted limiting

Cummings to a limited range of sedentary work rather than light work.  R.

24.

        After determining the RFC, the ALJ found that Cummings met her

burden at Step 4.  She could not perform her past relevant work.  The ALJ

relied on the RFC finding and the opinions of vocational expert Neal.  R.

26.

        At Step 5, the ALJ found that Cummings could perform a significant

number of jobs that existed in the national economy.  The ALJ relied on

Cummings' age, education, work experience, and the RFC determination;

the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P,

Appendix 2; and the opinions of vocational expert Neal.  R. 26-27.  The ALJ

found that Cummings was not disabled.

Cummings administratively appealed the decision of the ALJ.  On

May 26, 2020, the Appeals Council denied Cummings' request for review.

The decision of the ALJ then became the final decision of the Defendant

Acting Commissioner.  R. 1.  Cummings then brought this action for judicial

review.

<u>ANALYSIS</u>

This Court reviews the Decision of the Commissioner to determine

whether it is supported by substantial evidence.  Substantial evidence is

"such relevant evidence as a reasonable mind might accept as adequate"

to support the decision.  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971).

This Court must accept the findings if they are supported by substantial

evidence and may not substitute its judgment or reweigh the evidence.

<u>Jens v. Barnhart</u>, 347 F.3d 209, 212 (7th Cir. 2003); <u>Delgado v. Bowen</u>, 782

F.2d 79, 82 (7th Cir. 1986).  This Court will not review the ALJ's evaluation

of statements regarding the intensity, persistence, and limiting effect of

symptoms unless the evaluation is patently wrong and lacks any

explanation or support in the record.  <u>See</u> <u>Pepper v. Colvin</u>, 712 F.3d 351,

367 (7th Cir. 2014); <u>Elder v. Astrue</u>, 529 F.3d 408, 413-14 (7th Cir. 2008);

SSR 16-3p, 2017 WL 5180304, at *1 (October 25, 2017) (The Social

Security Administration no longer uses the term credibility in the evaluation

of statements regarding symptoms).  The ALJ must articulate at least

minimally her analysis of all relevant evidence.  Herron v. Shalala, 19 F.3d

329, 333 (7th Cir. 1994).  The ALJ must "build an accurate and logical

bridge from the evidence to her conclusion."  Clifford v. Apfel, 227 F.3d

863, 872 (7th Cir. 2000).

The ALJ's decision is supported by substantial evidence.[5]  The ALJ

relied on Dr. Jafri's findings that Cummings' headaches were not status

migrainosus and not intractable.  This meant that he found that her

headaches would respond to treatment.  The ALJ also cited evidence that

Cummings received continued treatment for her headaches.  The ALJ

relied on the medical examinations that showed full strength, normal range

of motion, and normal sensation.  The ALJ also relied on the imaging that

showed mostly mild degenerative changes in Cummings' spine, shoulder,

and wrist, and evidence that her symptoms in those areas of her body

responded to treatment by injections, particularly her shoulder and her

wrist.  The ALJ further relied on the opinions of Drs. Pardo and Gonzalez.

---

[5] Cummings only addresses the ALJ's findings regarding her diabetic neuropathy, migraines, and musculoskeletal disorders in her spine, right shoulder, and right wrist.  Cummings does not assert any error in other parts of the ALJ's decision.  The Court, therefore, limits the discussion to those areas.

The Acting Commissioner correctly notes that those opinions are uncontroverted by any healthcare provider.  The ALJ also relied on the opinions of vocational expert Neal.  Collectively, this evidence provides substantial evidence to support the ALJ's determination that Cummings was not disabled at Step 5 of the Analysis.

Cummings argues that the ALJ's citations to the record do not support her findings.  The Court disagrees.  The ALJ cited to physical examination findings by medical providers, such as intact sensation, normal muscle tone, and full range of motion.  The citations are to examinations by qualified medical providers and support the ALJ's finding for which she cited them.  Sometimes the ALJ cited multiple pages of a medical record and the evidence for which the ALJ cited the record was only of one or a few of the pages cited.  The Court can track the ALJ's methods and could locate the specific examination finding on which the ALJ relied. The Court sees no reversible error.[6]

Cummings argues that the ALJ failed to minimally articulate her evaluation of the material evidence.  Cummings cites additional medical

---

[6] One citation did not support the ALJ's finding at all.  The ALJ stated that Cummings had "a history of migraines and tinnitus generally improved or relieved with medication."  R. 22.  The ALJ cited R. 542 and R. 546.  These two pages do not contain information that supports this assertion.  The Court finds that this one error in citation is not sufficient to warrant reversal, particularly since other evidence supports the assertion.  See R. 2059 (Dr. Al-Dahhak stated that Cummings' migraines responded to treatment.).

evidence in the record that the ALJ did not mention.  The ALJ is not

required to mention every piece of evidence in the record but cannot ignore

an entire line of contrary evidence.  See e.g., Terry v. Astrue, 580 F.3d 471,

477 (7th Cir. 2009).  The additional medical evidence cited by Cummings

does not show contrary evidence.  Cummings often cited only her

subjective reports to her doctors.  Several of the examination notes from

the same cited office visits, however, provided additional support for the

ALJ's findings.  For example, Cummings cited to the February 26, 2018

examination by Al-Dahhak.  Dr. Al-Dahhak assessed at that visit that

Cummings' migraines were "responsive to current management."  R. 2059.

Cummings cited the October 5, 2018 examination by the resident Dr.

Sharma in which he found during monofilament testing that Cummings'

sensation was absent in the left foot and mild in the right.  R. 2584.  Dr.

Sharma, however, also found sensation to be normal to vibratory testing,

and at the same office visit, the specialist endocrinologist Dr. McKee found

sensation in the plantar areas of the feet to be within normal limits to

monofilament testing.  R. 2577.  In other cases, Cummings cited the

diagnosis of uncontrolled diabetes, but the diagnoses did not contain a

finding by the medical provider that the diabetes caused more serious

functional limitations that were inconsistent with the ALJ's RFC finding.

These records cited by Cummings fail to show that the ALJ failed to consider material contrary evidence in the record.

Cummings relies on the Seventh Circuit's decisions in <u>Shauger v. Astrue</u>, 675 F.3d 690 (7th Cir. 2012), and <u>Moore v. Colvin</u>, 743 F.3d 1118 (7th Cir. 2014), to support her argument that the ALJ failed to articulate the material evidence.  The <u>Shauger</u> decision concerned the ALJ's determination of the claimant's credibility under the now superseded SSR 96-7.  <u>See</u> SSR 16-3p.  Cummings does not raise or assert any error in the ALJ's evaluation of her statements of the severity of her symptoms.   The <u>Shauger</u> case does not apply.  In <u>Moore</u>, the claimant showed that the record contained significant medical evidence that was inconsistent with the ALJ's determination.  The claimant in Moore had been diagnosed with intractable migraines, meaning that the migraines did not respond to treatment, and the claimant underwent experimental surgery as part of a research study to try to relieve the claimant's migraines.  Further, the claimant's treating neurologist offered a medical opinion on the debilitating effect of the claimant's migraines.  <u>Moore</u>, 743 F.3d at 1125-28.  The ALJ in <u>Moore</u> erred by disregarding such "significant medical and testimonial evidence."  <u>Id.</u> at 1127.  The ALJ did not disregard such evidence here. Cummings further did not present any medical opinion evidence that

contradicted the ALJ's finding.  The ALJ minimally articulated her

evaluation of the material evidence in this case.  There was no error.

Cummings argues that the ALJ erred in not following SSR 19-4p on

evaluation of headache disorders.  SSR 19-4p was issued on August 26,

2019, after the ALJ issued her decision.  SSR 19-4p, therefore, does not

apply.  See SSR 19-4p, 2019 WL 4169635, at *8, n. 27 (Reviewing courts

are to apply SSRs in effect at the time a decision was made).

Furthermore, the ALJ did not commit any reversible error under SSR

19-4p, even if it applied.  SSR 19-4p is written in a question-and-answer

format with nine questions and answers.  The first seven questions concern

how the Social Security Administration determines if a person had a

medically determinable impairment of a headache disorder.  SSR 19-4p,

2019 WL 4169635, at *2.  The ALJ found that Cummings had a severe

medically determinable impairment of migraines. R. 16.  Thus, the issue of

whether the ALJ followed the answers to those seven questions is moot.[7]

The eighth question and answer concerns how the Social Security

Administration determines that a headache disorder meets or equals a

Listing.  Cummings does not argue that her migraines impairment equaled

---

[7] The Court does not decide whether SSR 19-4p requires ALJs to go through the nine questions and answers as a sequential analysis in applicable decisions entered after August 26, 2019.

a Listing.  Even if she did challenge the ALJ's ruling at Step 3, she failed to

cite evidence that would support the conclusion that her migraines equaled

a Listing.  The SSR states that the Social Security Administration models

its analysis of headache disorders on the Listing 11.2 for epilepsy.  SSR

19-4p, 2019 WL 4169635, at *7.  The Listing for epilepsy requires "a

detailed description from an acceptable medical source of a typical

headache event, including all associated phenomena."  Id.  Cummings has

not identified any such detailed description by an acceptable medical

source.  Thus, there would not be error under the eighth question and

answer in SSR 19-4p even if it did apply.

The ninth question and answer addresses how the ALJ would

incorporate the headache disorder in the RFC.  The answer to the ninth

question states:

> We consider the extent to which the person's impairment-
> related symptoms are consistent with the evidence in the
> record. For example, symptoms of a primary headache
> disorder, such as photophobia, may cause a person to have
> difficulty sustaining attention and concentration. Consistency
> and supportability between reported symptoms and objective
> medical evidence is key in assessing the RFC.

SSR 19-4p, 2019 WL 4169635, at *8.  The ALJ followed this methodology.

She considered whether the reported symptoms were consistent with and

supported by the evidence in the record.  There was no error even if SSR 19-4p applied.

Cummings finally argues that the ALJ's findings regarding her musculoskeletal impairments to her spine, right shoulder, and right wrist were not supported by substantial evidence.  Cummings essentially asks the Court to reweigh the evidence.  This the Court will not do.  <u>Jens</u>, 347 F.3d at 212 (7th Cir. 2003); <u>Delgado</u>, 782 F.2d at 82.  Moreover, the evidence showed largely mild impairments that were consistent with the ALJ's RFC limiting Cummings to a limited range of sedentary work.  The wrist and shoulder also responded to injections and physical therapy.  The Court sees no error in the ALJ's evaluation of Cummings' musculoskeletal impairments.

THEREFORE, IT IS ORDERED that the Defendant Acting Commissioner's Motion for Summary Affirmance (d/e 21) is ALLOWED, Plaintiff Tracy L. Cummings' Motion for Summary Judgment (d/e 16) is DENIED, and the Decision of the Defendant Acting Commissioner is AFFIRMED.  THIS CASE IS CLOSED.

ENTER:   February 11, 2022

s/ *Tom Schanzle-Haskins*
TOM SCHANZLE-HASKINS
UNITED STATES MAGISTRATE JUDGE